IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. JAIRO HUERTAS-MERCADO [1], and ERICK PIZARRO-MERCADO [3], **Defendants.** | **Criminal No.** 18-451 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Defendants Jairo Huertas-Mercado ("Huertas") and Erick Pizarro-Mercado ("Pizarro") (collectively, "defendants") move for a judgment of acquittal of Count 1 of the Third Superseding Indictment pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29").[1]  (Docket Nos. 427 and 435.)  For the reasons set forth below, the defendants' Rule 29 motions are **DENIED**.

I. **Background**

Huertas and Pizarro committed a succession of violent crimes within a span of 19 days, escalating from carjacking to kidnapping and murder.  The trial testimony revealed that these defendants terrorized unsuspecting victims for financial gain, to avenge the

---

[1] Defendant Huertas makes a general motion for acquittal "on all counts," but only argues that he be acquitted of the charge in Count 1.

Criminal No. 18-451 (FAB)                                                2

death of a deceased relative, and to eliminate "enemies" of a drug trafficking organization in the Lagos de Blasina public housing project.  (Docket No. 413 at p. 69.)

On February 11, 2020, a grand jury returned a seventeen-count third-superseding indictment charging Huertas, Pizarro, Joshua Luyando-González ("Luyando"), Kevin Villegas-Carrasco ("Villegas"), Wilkin Michael Cepeda-Colón ("Cepeda"), and Roberto Meléndez-Hiraldo ("Meléndez") with carjacking, kidnapping, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. sections 2119(1) and (2), 18 U.S.C. sections 1201(1) and (2), and 18 U.S.C. sections 924(c)(1)(A)(ii)-(iii) and 2, respectively.  (Docket No. 103.)  Count fourteen charged Huertas, Pizarro, and Luyando with kidnapping resulting in the death of Luis Sáenz-Martínez ("Sáenz") in violation of 18 U.S.C. sections 1201(a)(1) and (2).  Id. at p. 8.

On March 4, 2022, Luyando pled guilty to counts one and fifteen of the third-superseding indictment pursuant to an agreement with the United States (carjacking and brandishing a firearm during and in relation to a crime of violence).  (Docket Nos. 329 and 330.)[2]  Villegas pled guilty to counts one and three

---

[2] He also pled guilty to count two of the second superseding indictment in criminal action 18-516 (FAB) (brandishing a firearm during and in relation to a crime of violence).  See United States v. Luyando, Case No. 18-516, Docket Nos. 179 and 335.)

Criminal No. 18-451 (FAB)                                              3

of the third-superseding indictment (carjacking and brandishing a firearm during and in relation to a crime of violence) pursuant to a agreement with the United States on March 15, 2021.  (Docket No. 262.)  Huertas and Pizarro's seven-day trial commenced on September 9, 2022.  (Docket No. 402.)  Luyando and Villegas testified as government witnesses.[3]

### A.   The May 20, 2018 Carjacking: Counts 10 and 11

Luyando, Cepeda, Huertas and Pizarro "decided to take a [Toyota] Tacoma" from Carlos Cáez-Delgado ("Cáez") in Naguabo, Puerto Rico at approximately 11:00 PM on May 20, 2018.  (Docket No. 413 at p. 71.)  Huertas, Pizarro and Cepeda carried loaded firearms, including an AK-47 rifle and two pistols. Id. at pp. 72-73.  The defendants blocked the Tacoma on a one-way road, exited their vehicle, and pointed a "long weapon" at Cáez.  (Docket No. 406 at p. 7; Docket No. 413 at p. 73.)  They subsequently "threw [Cáez] to a grassy area" and frisked him.  (Docket No. 413 at p. 73.)

The defendants referred to Cáez as "the one [they] were looking for," stating that they would shoot him if he moved. (Docket No. 406 at p. 12.)  Cáez placed his hands behind his head, informing the defendants that "it was not possible, that [he] could

---

[3] Cepeda and Meléndez also pled guilty.  (Docket Nos. 246 and 302.)  They did not, however, testify at trial.

be the person they were looking for." Id. at p. 13. Pizarro and Cepeda fled Naguabo in the Tacoma, followed by Huertas and Luyando in an SUV. Id. Cáez remained on the ground in "tall grass" for two minutes until the [defendants] left" with his Tacoma, wallet, and cellular phone. (Docket No. 406 at p. 14.)

**B.   The May 27, 2018 Carjacking: Counts Twelve and Thirteen**

On May 27, 2018, Luyando, Huertas, Pizarro and Meléndez, using the Tacoma they had carjacked from Cáez, stole an Infiniti FX45 from Gilberto Medina-Cardona ("Medina") and his family, who were on a day trip in Río Grande, Puerto Rico. (Docket No. 406 at p. 20.) Medina had parked the Infiniti near a waterfall to take photos. Id. at p. 23. Two of Medina's family members had gone down from the roadway to take pictures of the waterfall. Two defendants emerged from the stolen Tacoma, pointing loaded firearms at Medina and his family, "screaming and yelling for [them] to get on [their] knees" and look away. Id. at pp. 23-24; Docket No. 413 at p. 74. The defendants demanded Medina's car keys and the family's "personal belongings, money, jewelry" and professional grade cameras. (Docket No. 406 at p. 24.)

Medina informed the defendants that the keys were located "in the cupholder of the [Infiniti]." Id. at p. 24. Before driving away, the defendants instructed Medina: "don't look back, don't look back. Count to one hundred and stay there." Id.

Criminal No. 18-451 (FAB)                                                    5

at p. 25.  Luyando testified that the defendants stole this vehicle "by intimidation and force."  (Docket No. 413 at p. 75.)  Medina felt "terror," "panic," and "unable to manage the situation."  (Docket No. 406 at p. 26.)  The defendants ultimately burned and abandoned the Infiniti near an "old factory" in La Central, Puerto Rico.  (Docket No. 413 at p. 83.)

    **C.    The May 31, 2018 Kidnapping and Murder of Luis Sáenz-Martínez: Counts Fourteen, Fifteen, and Sixteen**

Luyando, Huertas, and Pizarro visited an acquaintance at the Villas Del Río public housing project on May 31, 2018.  (Docket No. 413 at p. 77.)  They "came up with the idea" of "holding up" Sáenz, the drug dealer" associated with this location and "enemy" of the defendants.  Id. at pp. 77-78.

The defendants initially requested to purchase "weed" from Sáenz.  Id. at p. 81.  They then aimed a loaded AK-47 and a pistol at him, forcing Sáenz into the backseat of a Toyota RAV4. Id. at p. 81.  Luyando, Huertas, and Pizarro asked Sáenz if "he knew of another person who was of higher rank [in a rival drug trafficking organization, asking] him if he wanted to give up somebody else."  Id. at p. 82.  Sáenz remained silent.  Id.  After consulting with an individual named "Gongo," the defendants understood that "they were to kill Sáenz."  Id. at p. 83.

Criminal No. 18-451 (FAB)                                                          6

Luyando drove the RAV4 to La Central, "close to the Infiniti." Id. Pizarro forced Sáenz out of the RAV4, shooting him in the back with the AK-47. Id. at p. 85. A firearm expert testified that casings recovered from this location emanated from an AK-47, buttressing the credibility of Luyando's testimony. (Docket No. 419 at p. 13.) Subsequently, Huertas shot Sáenz with the same firearm. (Docket No. 413 at p. 87.) Luyando then "took [the AK47] away from [Huertas] and also started shooting at [Sáenz]." Id. A forensic pathologist from the Puerto Rico Institute of Forensic Science testified that Sáenz sustained 26 gunshot wounds to the skull, torso, and lower extremities. Id. at p. 31. The defendants unceremoniously "got in [the RAV4] and left" the scene. Id. at p. 87.

**D.   The June 3, 2018 Carjacking: Counts Eight and Nine**

On June 3, 2018, Luyando and Huertas "decided to have another vehicle" in Piñones, Puerto Rico. (Docket No. 413 at p. 90.) Edwin Barreras-Romero ("Barreras") had driven a Nissan Altima to this location "early in the morning" to surf, accompanied by two female friends. (Docket No. 406 at p. 100.) Huertas approached Barreras on the beach with a loaded AR-15, stating: "Hey, this is a carjacking." Id. at p. 101. Barreras attempted to distract Huertas by "joking" with him, hopeful for the opportunity to "take this guy." Id. He observed Luyando emerge

"from the bushes," however, and strike his female friend in the head with a loaded AK-47. Id. at p. 102. Luyando testified that he "kicked [this female] so that she'd fall to the ground." (Docket No. 413 at p. 91.) Barreras then "had to get down," "afraid for [his life]." Id. at p. 110. The defendants shouted: "Stay down or we're [sic] kill you . . . Stay down. Don't look at us." Id. at p. 112.

Luyando attempted to remove a diamond ring from Barrera's female friend, threatening to "rape" her if she resisted this demand. (Docket No. 406 at p. 112.) He abandoned the diamond ring, however, in favor of an expeditious escape. Huertas drove the Nissan to Loíza, Puerto Rico, with $700 in United States currency, a surfboard, a watch, and several cell phones which were inside the vehicle. (Docket No. 406 at p. 111; Docket No. 413 at p. 90.)

### E. The First June 4, 2018 Carjacking: Counts Four and Five

María Martínez-Figueroa ("Martínez") and her husband drove to Punta Santiago, Puerto Rico in their burgundy Toyota Camry to catch crabs at a nearby beach on June 4, 2018. (Docket No. 406 at p. 132.) At approximately 10:30 p.m., Luyando, Pizarro and Huertas observed this "elderly couple" seated inside the Camry on a dark road. (Docket No. 406 at p. 133; Docket No. 413 at pp. 92-93.)

Criminal No. 18-451 (FAB)                                                    8

      Earlier that day, "it had occurred to [the defendants] that [they] should steal a car."  (Docket No. 413 at p. 92.) Luyando parked the defendants' vehicle in front of the Camry. Id. at p. 93.  Huertas and Pizarro aimed loaded firearms at the couple. Id.  Martínez exited the car, but her husband refused to placate the defendants.  Id.  Huertas "told him that he was gonna shoot him if he didn't get out."  Id. at p. 84.  Luyando reiterated this threat, shouting that he, too, would "shoot [Martínez's husband]" if he remained in the Camry.  Id.  He complied only after Martínez stated that "it was better to lose the car than [their] lives." (Docket No. 406 at p. 137.)  Martínez "[asked] for her purse" before the defendants fled.  (Docket No. 413 at p. 94.)  They denied this request, absconding with the Camry and the couple's personal belongings.  Id. at p. 95.

      Huertas confessed to this crime and signed a written statement.  The United States presented the following admission at trial:

> June 19, 2018, 12:40 PM.  Interview with Jairo Huertas-Mercado.  He was in Loíza hanging out with some friends in Las Cuevas neighborhood.  There they planned what they were going to do.  They said, we're going to look for a car.  They left Las Cuevas neighborhood and took Road No. 3 until we got to Naguabo beach.  There we saw this Burgundy car parked.  I don't know the make.  We saw the car and turned around and we stopped them.  Took the car and drove it to the projects, there we sold it to some guys there.  I don't know their names.  [Signed] Jairo Huertas-Mercado, 12:15 PM, June 19, 2018.

Criminal No. 18-451 (FAB) 9

(Docket No. 406 at p. 153-54, see Trial Ex. 36-A.) Huertas repeated this statement to law enforcement officers, conceding that he participated in the "carjacking of a burgundy Toyota Camry." (Docket No. 403 at p. 36.)

    **F.    The Second June 4, 2018 Carjacking: Counts Six and Seven**

Immediately after robbing Martínez and her husband, Huertas and Pizarro carjacked a fifth vehicle. (Docket No. 413 at p. 96.) Alicia Roldán-Sánchez ("Roldán") had "left church to have [dinner] with some friends" on June 4, 2018. (Docket No. 406 at p. 168.) Huertas and Pizarro passed Roldán's Kia Sportage in the Camry they had previously stolen from the elderly couple. Id. They abruptly stopped on the road. Id. A defendant exited this vehicle, pointed a firearm at Roldán's face, and yelled: "Walk towards the vegetation or I'll fire shots at you." (Docket No. 406 at p. 171.) Roldán felt "fearful in a very isolated location. [She] feared for her life." Id. Pizarro and Huertas stole the Sportage with Roldán's cellphone and purse inside the vehicle. Id. at p. 172. Huertas confessed to law enforcement officers that he carjacked a Kia Sportage "from a lady." (Docket No. 413 at p. 36.)

### G. The June 5, 2018 Kidnapping of Bryant Meyers: Counts One, Two and Three

Huertas, Luyando, Pizarro, and Villegas kidnapped Bryan Robert Rohena-Pérez, also known as Bryant Meyers ("Meyers"), on June 5, 2018 from a public basketball court.  (Docket No. 412 at p. 6.)  On this day, Huertas requested that Villegas accompany him "to the Las Lomas Ward neighborhood where [Meyers'] mother lived" to settle "some accounts."  Id. at p. 54.  Huerta's cousin, "Corroro," had previously acquired "some pounds of marijuana" from Meyers.  Id.  This illicit transaction allegedly resulted in a dispute that prompted Meyers to pay for Corroro's murder.  Id. at p. 54.  Meyers, an "urban music singer," then referred to Corroro's demise in a song.  Id. at p. 56; Docket No. 413 at p. 38.  According to Luyando, Huertas "had this grudge against [Meyers] . . . because of his cousin's death."  (Docket No. 413 at p. 100.)

Gongo spoke with Huertas on the phone, instructing the defendants that if they intended to confront Meyers, they should "do it well."  Id. at p. 99.  Subsequently, Huertas drove Luyando, Pizarro, and Villegas to Las Lomas Ward in the stolen Kia Sportage.  Id. at p. 55.  Villegas carried a "Glock automatic 9 by 19.  [Pizarro] was carrying an AK-47.  [Huertas carried] an AK-47 known as The Punisher.  [Lastly, Luyando carried] an AR-15."  Id. at p. 61.  All firearms were loaded.  Id.

Criminal No. 18-451 (FAB)                                                     11

Meyers "[was] playing basketball – there were quite a few people at the court . . . younger guys, there were several men . . . from the neighborhood."  (Docket No. 413 at p. 39.)  María Elena Pérez-Díaz ("Ms. Pérez"), Meyers' mother, observed Huertas passing the front of her parents' house at approximately 5:45 p.m. "carrying on his right side a long weapon."  (Docket No. 412 at p. 8.)  She attempted to call Meyers.  Id. at p. 9.  Huertas immediately located Meyers, however, preventing Pérez from alerting her son.  Id. at p. 10.

A chaotic "mess ensued" once the defendants entered the basketball court.  (Docket No. 413 at p. 19.)  During this melee, the defendants shouted:  "nobody move and look down to the floor." Id. at p. 20.  Bystanders gathered around the defendants to thwart the kidnapping.  Id. at p. 102.  The defendants dispersed the crowd, however, by firing a shot into the air.  Id. at p. 102.

Ms. Pérez ran to the basketball court, observing Huertas pulling her son Meyers by the hair.  Id. at p. 20.  The defendants aimed their firearms at Meyers, dragging him away from the location against his will.  Id. at p. 11.  They hit "[him] in the head with [a] pistol a couple of times."  (Docket No. 413 at p. 41.)  Indeed, Luyando testified that Meyers "[fought] back, he didn't want to walk, so I hit him on the head with the weapon that I had and we

were able to immobilize him somewhat to get him close to the vehicles."  (Docket No. 413 at p. 102.)

Ms. Pérez approached the defendants, "asking why they were doing that, to leave [Meyers] alone, what was it that they wanted?"  Id. at pp. 11-12.  Huertas grabbed Ms. Pérez's phone and "broke it" before she could call 911.  Id. at p. 12.  She begged the defendants "to please leave [Meyers] alone and not to harm him," offering them money.  Id.  Ms. Pérez grasped onto Meyers' sneakers while the defendants forced him into the Kia Sportage, stating "wherever he's going I'm going too."  Id.  The defendants again "hit [Meyers] a couple of times in the head, so [he] couldn't see very well."  (Docket No. 413 at p. 40.)

Huertas asked Ms. Pérez for the keys to Meyer's BMW X6 SUV.  (Docket No. 413 at pp. 19 and 40; Docket No. 412 at p. 39.)  Luyando, Pizarro, and Villegas remained in the Kia Sportage with Meyers while Huertas and Ms. Pérez entered the BMW.  (Docket No. 412 at p. 20.)  Huertas placed the AK-47 between his legs, driving the BMW closely behind the Kia Sportage.  Id. at p. 21.  Ms. Pérez again asked Huertas "what . . . he wanted."  Id.  Huertas answered:  "I've just been ordered . . . It's an order . . . Just take it easy, stay calm."  Id.  Luyando, Pizarro, and Villegas repeatedly "[asked Meyers] for money . . . [If Meyers] could go get money and how much money [he] could get."  (Docket No. 413 at

p. 45.)  Meyers offered to write the defendants a check.  Id. at p. 104.  Luyando then asked Meyers: "[Are you] stupid or something 'cause if [Meyers] was gonna write a check out . . . when [the defendants] go cash it [they] would get arrested."  Id. at p. 104.

The defendants parked both vehicles at the entrance to a landfill in Carolina, Puerto Rico.  Id. at p. 23.  Police officers who were on patrol subsequently arrived unexpectedly.  Id.  Huertas then "opened the [car] door, grabbed his weapon and left running" to a "woody area."  Id. at pp. 23 and 25.  Law enforcement pursued Huertas on foot, but to no avail.  Id.

Meyers then "jumped out of" the Kia Sportage, injuring his knee.  (Docket No. 413 at p. 43.)  The remaining defendants and police officers exchanged fire.  Id.  A police vehicle collided with the KIA Sportage, but Luyando "was able to get the patrol car unhooked from the SUV."  Id. at p. 105.  Luyando, Pizarro, and Villegas escaped, "helped [Huertas] get out of the bushes" after the police officers left, and burned the Kia Sportage.  Id. at p. 106.

Huertas confessed to kidnapping Meyers, stating that he committed this crime because "the artist had made some comments in a song against a group."  (Docket No. 403 at p. 30.)  He intended "to take away [Meyers] to confront him about the comments that he had made and to ask [him] if he was ready . . . to go to war."

Id.  Huertas' confession corroborated that:  Luyando and Villegas participated in the kidnapping, the defendants "grabbed hold" of Meyers at the basketball court, he carried an AR-15 rifle, Ms. Pérez "tried to intervene on behalf of her son;" he drove Ms. Pérez in Meyer's BMW to the Carolina landfill behind the Kia Sportage, and that the defendants "were able to escape."  Id. at pp. 30-33.  Essentially, Huertas' confession is consistent with the testimony adduced by Meyers, Pérez, Luyando, and Villegas.

### H.   The Motions for Judgments of Acquittal

On September 14, 2022, the jury found Huertas and Pizarro guilty of counts one through sixteen of the third superseding-indictment.  (Docket No. 420.)  Huertas and Pizarro challenge the conviction for count one, carjacking the BMW during the kidnapping of Bryant Meyers.  (Docket Nos. 427 and 435.)  Huertas argues that this "vehicle was taken without any intent to cause death or bodily harm."  (Docket No. 427 at p. 5.)  The defendants purportedly stole the BMW "out of convenience."  Id.  Pizarro adopts this specious argument, placing responsibility for the carjacking on Meyers' mother.  (Docket No. 435 at p. 2.)  Ms. Pérez "voluntarily produced" the BMW "so that she could go together with her son." (Docket No. 435 at p. 2.)

Criminal No. 18-451 (FAB)                                          15

**II.  Rule 29 Legal Standard**

A court may set aside a jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  See Fed. R. Crim. P. 29. In reviewing a motion for judgment of acquittal, a court must consider the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt."  United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).

Rule 29 motions require a court to "take into account all evidence, both direct and circumstantial, and [to] resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict."  United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012).  The First Circuit Court of Appeals has called this sufficiency of evidence challenge "a tough sell," United States v. Polanco, 634 F.3d 39, 45 (1st Cir. 2011), and a "daunting hurdle," United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006).

While the sufficiency of the evidence is at the heart of the Rule 29 inquiry, deference to the jury's verdict controls the Court's analysis.  To uphold the jury's guilty verdict, the Court need only determine that the conviction "finds support in a

Criminal No. 18-451 (FAB)                                              16

plausible rendition of the record." United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012). Ultimately, a defendant must establish that "the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt." United States v. Vázquez-Soto, 939 F.3d 365, 371 (1st Cir. 2019).

**A.  Carjacking**

The jury had to find that the United States proved each element of the charged offenses beyond a reasonable doubt to convict Huertas and Pizarro. See Powell v. Tompkins, 783 F.3d 332, 354 (1st Cir. 2015) ("The Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.") (quoting McMillan v. Pennsylvania, 477 U.S. 79, 85 (1986)). To secure a conviction, the United States had to satisfy four elements:

> (1) the taking or attempted taking from the person or presence of another; (2) of a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce; (3) through the use of force, violence, or intimation; (4) with the intent to cause death or serious bodily harm.

United States v. Velázquez-Aponte, 940 F.3d 785 F.3d 785, 797 (1st Cir. 2019) (citing 18 U.S.C. § 2119).

Criminal No. 18-451 (FAB)                                               17

The intent to cause death or bodily harm may be "conditional," encompassing a "willingness to [kill or harm] <u>if necessary to hijack the car</u>." <u>United States v. Evans-García</u>, 322 F.3d 110, 114 (1st Cir. 2003) (citing <u>Holloway v. United States</u>, 526 U.S. 1, 11-12 (1999)) (emphasis added); see <u>United States v. Meléndez-Rivas</u>, 566 F.3d 41, 43 ("[The] intent requirement is satisfied if at the time [the defendant] took control of the motorcycle, he had an intent to kill or cause serious bodily injury to the driver, whether or not the intent was necessary to take the vehicle."). The relevant intent is the *mens rea* "at the moment the defendant demanded or took control over the driver's automobile." <u>United States v. Díaz-Rosado</u>, 857 F.3d 116, 121 (1st Cir. 2017) (noting that "the government does not have to prove that the defendant always intended, regardless of the victim's actions, to cause serious bodily harm").

**III. Discussion**

Huertas and Pizarro assert that the United States failed to establish that the defendants obtained the BMW with the intent to cause death or serious bodily harm. (Docket Nos. 427 and 435.) This argument lacks merit.

The First Circuit Court of Appeals has repeatedly held that "touching or threatening a victim while brandishing a firearm is sufficient evidence of intent 'to cause death or serious bodily

Criminal No. 18-451 (FAB)                                               18

harm' within the meaning of § 2119." United States v. Guerrero-Narváez, 29 F.4th 1, 10-11 (1st Cir. 2022) (citing United States v. Catalán-Román, 585 F.3d 453, 474 (1st Cir. 2009) (evidence that the defendant "pointed a nickel-plated pistol at Julia's face while demanding [that the driver] exit the car" satisfied the intent element in a section 2119 prosecution); Díaz-Rosado, 857 F.3d at 121, 126) ("Just as one can use brute force or a variety of items to kill or cause serious harm, one can also use such force or items to manifest an intent to cause death or serious harm if necessary.")).

Huertas and Pizarro ambushed Meyers with loaded firearms in a public area.  Ms. Pérez testified that Huertas aimed a firearm at her and broke her phone.  (Docket No. 413 at pp. 19-20.)  A defendant fired a shot at the basketball court, an intimidating act heard by Ms. Pérez and Meyers.  Huertas held an AK-47 between his legs inside the BMW, placing the firearm within reach should Ms. Pérez resist.  Id. at p. 21.  Ms. Pérez felt "nervous and scared."  Id. at p. 22.  Indeed, the record is replete with testimony establishing that the defendants used violence to kidnap Meyers and carjack the BMW.

Ms. Pérez's efforts to rescue her son do not detract from the force and intimidation employed by the defendants.  Coerced facilitation of a carjacking does not negate the defendants' use

Criminal No. 18-451 (FAB)                                              19

of force or intimidation.  Accordingly, the defendants cannot escape liability for carjacking the BMW because Ms. Pérez assisted Huertas in locating the keys and pursued her son's assailants.

Huertas posits that the BMW was "taken incidentally to the kidnapping" and "out of convenience."  (Docket No. 427 at p. 5.)  The fruits of illicit endeavors (*i.e.* cars, drugs, cash) are often "convenient" for criminals to possess.  Why else would they risk incarceration to steal these objects?  Huertas carjacked the BMW precisely because it was convenient for him to escape from the basketball court in a vehicle of substantial value.  Moreover, the acquisition of a vehicle need not be the primary objective of a defendant for section 2119 to attach.  See United States v. Rivera-Figueroa, 149 F.3d 1, 4 (1st Cir. 1989) ("But nothing in the statute requires that the taking be the ultimate motive of the crime.  It is enough that the defendant be aware that the action in which he is engaged, whether by himself or through direction or assistance to another, involves the taking of a motor vehicle."); United States v. García-Álvarez, 541 F.3d 8, 16 (1st Cir. 2008) (rejecting the defendants' argument that "the Government [failed to meet] its burden of establishing the intent element beyond a reasonable doubt because [the defendants] did not intend to take [the victim's] car but only to rob his home;" that the "car was only an improvised getaway vehicle" was irrelevant).

Criminal No. 18-451 (FAB)                                                20

## IV. Conclusion

For the reasons set forth above, Huertas' and Pizarro's motions for judgment of acquittal are **DENIED**.  (Docket Nos. 427 and 435.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 14, 2022.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE